IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARVIN HILL, | ) |
|     Plaintiff, | ) CIVIL ACTION NO. |
| v. | ) 01-AR-1179-S |
| WAL-MART STORES, INC., | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Before this court is the motion for summary judgment of defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), against plaintiff, Marvin Hill ("Hill"). Hill filed this action complaining that while he was employed by Wal-Mart, his immediate supervisor, John Marshall ("Marshall"), racially harassed him in violation of Title VII of the Civil Rights Act of 1964, that Marshall retaliated against him for complaining of the harassment; and that Wal-Mart, in violation of the Fair Labor Standards Act (FLSA), failed to pay him for certain earned overtime. Hill and Wal-Mart agree that the FLSA claim should be dismissed, a conclusion with which this court does not quarrel. Thus, only the harassment and retaliation claims remain for examination under Rule 56.

### Undisputed Pertinent Facts

On October 28, 1999, Wal-Mart hired Hill, who is black, to work in the produce area, under the direct supervision of Marshall, the produce manager, who is white. Upon starting his job, Hill

received from Wal-Mart a copy of Wal-Mart's undisputably careful written and clear anti-harassment policy. This policy provided for means of redress in the event of perceived harassment or other forms of discrimination.

Hill was well liked by customers and co-workers, and was a competent, hard-working employee. During Hill's only written evaluation, Marshall gave him the highest possible rating, stating that he "exceeds expectations". As a result, Hill received the maximum raise of thirty-seven cents an hour. Upset by the tension that he felt was occasioned by Marshall's treatment of him, Hill wrote letters to the C.E.O. of Wal-Mart and to the United States Justice Department, complaining of racism at Wal-Mart.

In early March of 2000, Hill handed to Bruce Abbot ("Abbot"), the general manager of the Wal-Mart store where Hill was employed, a letter complaining of racial harassment. Soon afterwards, Abbot convened a meeting that, at various times, included Abbot, co-manager Scott Currier ("Currier"), Marshall, and Hill. During the meeting, Hill described the incidents that led him to conclude that he was a victim of racial harassment. They all involved Marshall and no one else. Specifically, Hill alleged that Marshall often told racist jokes, frequently spoke of the days of slavery and lynching, used the epithets "nigger" and "jungle bunny" in reference to Hill, refused to pay Hill the $1.00 an hour nighttime differential for the overnight shifts Hill worked, and asked Hill

if he had had a "black Christmas." Marshall vehemently denied these racially offensive utterances and all other acts of discrimination alleged by Hill, but nevertheless apologized for anything offensive he may ever have said to Hill. Hill told Currier and Abbot that all he wanted was an apology and an end to the harassment, and that he did not want Marshall to be fired or severely punished. Currier told Hill to immediately report any further harassment by Marshall. The controversy between Hill and Marshall appeared to have been resolved. Not long after the meeting, Currier asked Hill on at least one occasion if Marshall had harassed him again, whereupon Hill said "No".

Two weeks after the meeting, Hill gave two weeks notice, saying that he was quitting in order to go to work for the City of Birmingham. When asked specifically, Hill said that his departure had nothing to do with any discriminatory treatment he had received. On August 31, 2000, Hill filed a charge of discrimination with the E.E.O.C. Despite his earlier disclaimer, Hill then made a claim of constructive discharge and he repeats that claim in his complaint filed in this case.

### Disputed Facts

When considering a summary judgment motion, all disputes of fact are resolved in favor of the non-moving party, who in this case is Hill. This said, the court continues with the narrative, filling the gaps with the disputed facts that are to be construed

in Hill's favor.

On February 16, 2000, Marshall told Hill that Marshall "ought to fire [Hill]." Hill interpreted this as retaliation for the letters Hill wrote to the C.E.O. of Wal-Mart and the Justice Department. A few days after the March meeting, Marshall sang the chorus to the theme song to the television program "COPS", but changed the word "bad" to "black". The standard version of the chorus is, "Bad boys, bad boys, whatcha gonna do, whatcha gonna do when they come for you." The song, as rewritten by Marshall, then, was, "Black boys, black boys, whatcha gonna do, whatcha gonna do when they come for you." [1] On March 26 or 27, in anticipation of Marshall's voluntary transfer to another store, Marshall told Hill that Marshall would miss him, saying that he did not believe that there were many black men who were willing to work. Hill did not appreciate this back-handed compliment.

According to Hill, he was lying when he said that discrimination had nothing to do with his decision to leave Wal-Mart. To the contrary, he now says that he quit because he could no longer stand the racial hostility at Wal-Mart and because that hostility had induced sleepless nights and appetite loss. In reality then, according to Hill's current litigation position, he was, in effect, fired by Wal-Mart.

---

[1] http://www.lyricsdownload.com/download/i/inner-circle/Lyrics%20-%201.htm

4

## Analysis

Wal-Mart has offered three reasons why it should be granted summary judgment; (1) that all, or most, of the incidents took place outside the 180 day statute of limitations; (2) that any harassment of Hill was not substantial enough to merit relief, particularly for constructive discharge; and (3) that Wal-Mart is entitled to the *Faragher/Ellerth* affirmative defense. The court will separately examine each of Wal-Mart's three arguments. If Wal-Mart has shown that no reasonable finder of fact could find the existence of facts upon which a verdict for Hill could be based, its motion for summary judgment must, of course, be granted. Therefore, if the court finds that Wal-Mart prevails on any one of the reasons it asserts as an absolute obstacle to Hill's action, the analysis will proceed no further, and this court will grant summary judgment for Wal-Mart. If, however, one or more of the three reasons is not an absolute and insurmountable obstacle, the court will deny Wal-Mart's motion, and the case will proceed to trial.

The parties agree that the general rule is that Hill can only recover for discrimination that occurred during the 180 days prior to Hill's E.E.O.C. filing on August 31, 2000. This means that Hill can recover only for any discrimination that occurred on or after March 5, 2000. Hill has invoked the "continuing violation" exception to this rule. To this end, Hill cites two cases,

*Calloway v. Partners Nat'l Health Plans*, 986 F. 2d 446, 449 (11th Cir. 1993) and *Malone v K-Mart Corp.*, 51 F. Supp 2d 1287 (M.D. Ala. 1999).

Hill's diary says that Marshall made the "not many black men are willing to work" comment on March 4, but Hill testified at deposition that Marshall actually made the comment on March 26 or 27. The court must construe this conflicting evidence in Hill's favor, and assume that the comment was made in late March. All of the slurs and indignities that were allegedly visited upon Hill took place before this comment. If they all preceded March 5, 2000, Hill would be barred. Acts that predated March 5, 2000 and the one that Hill now says occurred after March 5, 2000 arguably accumulated to define the environment in which the late March comment was made. A jury could find that the "willing to work" comment was a continuation of the type of conduct, which occurred more than 180 days before the E.E.O.C. charge was filed.

The parties could not have been aware of *National Railroad Passenger Corporation v. Morgan*, ___ U.S. ___ 20 U.S.L.W. 4524, 2002 WL 1270268 (2002), when they wrote their briefs in support of or in opposition to the Rule 56 motion, because the Supreme Court only decided that case last week, on June 10, 2002. *Morgan*, in application to the instant case, clearly teaches that there is a triable issue of fact regarding the statute of limitations because it allows a recovery for hostile environment which predates the 180

day period if this is an act of hostility thereafter. If Morgan had been decided sooner, the statute of limitations issue would have been resolved.

The court proceeds to the next issue, i.e. Wal-Mart's questioning of the substantiality of Marshall's offensive conduct.

> To prove a prima facie case of hostile work environment racial harassment, plaintiffs must each establish that: (1) he belongs to a protected group; (2) he has been subjected to unwelcome racial harassment; (3) the harassment was based on his race; (4) *the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment*; and (5) a basis for holding the employer liable.

*Shields v. Fort James Paper Corp.*, 167 F. Supp 2d 1322, 1329 (S.D. Ala 2001)(emphasis supplied). In order to survive summary judgment, a plaintiff must present evidence upon which a reasonable jury could find for him on all of the above five elements. Hill has, beyond question, satisfied the first three criteria. Wal-Mart argues that Hill cannot meet criterion four. The court will consider Hill's ability to satisfy criterion five in its analysis of the *Faragher/ Ellerth* affirmative defense.

The sum of Hill's allegations are as follows. Over a five month period, Marshall often told racist jokes, frequently spoke of the days of slavery and lynching, used the epithets "nigger" and "jungle bunny" in reference to Hill, refused to pay Hill the $1.00

an hour nighttime differential for the overnight shifts Hill worked, and asked Hill if he had had a "black Christmas." Often, when Hill arrived at work, the white workers would go on break, leaving Hill to man the produce section alone. Unlike his white co-workers, Hill had to work six days in a row if he wanted off for a weekend.

The Eleventh Circuit analyzes the fourth criterion using four sub-criteria. They are "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Gupta v. Florida Board of Regents*, 212 F. 3d 571, 584 (11th Cir. 2000)(*internal citation omitted*).

In the instant case, Hill says that Marshall uttered the word "nigger" only once. While once in five months is once too many for respectable people, it is not often enough to itself constitute actionable behavior. But Marshall is accused of doing more. Hill alleges that Marshall told racial jokes "every day." (Hill depo. at 66). Hill has satisfied the first sub-criterion. The comments that Hill alleges Marshall made to him were, for the most part, impolite, and were not so severe as to be racially hostile. The single instance of the word "nigger" is the only exception. The $1.00 shift differential, the requirement that Hill, but not white employees, work six days before getting a weekend off, and the

8

coordinated abandonment of Hill by his white co-workers were irritating, but again, not so severe as to cross the line. The acts were not "physically threatening or humiliating." Rather, they were more like "a mere offensive utterance."

Hill now maintains that he left Wal-Mart because of the harassment. Hill claims that the harassment was so severe that his resignation was not voluntary, and that he therefore was constructively discharged. If Hill was constructively discharged, discharge would be the ultimate interference with an employee's job performance, but the circumstances surrounding Hill's resignation are so enigmatic, and the complained of conduct, as described by Hill himself, was not sufficiently intolerable as to have compelled his resignation. A plaintiff can have a viable hostile environment claim that would not constitute a valid constructive discharge claim. *Bernheim v. Litt*, 79 F3d. 318, 325 (2nd. Cir. 1996). The total of all of the acts of "harassment" in this case is not enough upon which to base a constructive discharge claim, but this court finds that the total conduct does contain enough of the four *Gupta* sub-criteria to be actionable under Title VII for a claim of mental anguish for hostile environment.

Usually, a claim that requires "pervasiveness" involves acts of discrimination against more than one employee. It is hard to conceive of pervasiveness in relation to only one black employee, but the court is willing to take the step that Hill wants the court

9

to take. There is sufficient evidence of "pervasiveness" to create a jury issue of hostile environment upon which to seek compensation for mental anguish, if not lost wages for constructive discharge.

Wal-Mart next argues that even if Hill has amassed enough evidence to meet the first four criteria cited in *Mendoza*, he cannot meet the fifth criterion necessary for holding Wal-Mart liable.   To   defeat   Hill's   claim,   Wal-Mart   asserts   the *Faragher/Ellerth* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries v. Ellerth*, 524 U.S. 742 (1998). Because this is an affirmative defense rather than an attack on Hill's case-in-chief, the burden is on Wal-Mart to demonstrate that, even with all the evidence being viewed in a light most favorable to Hill, no reasonable jury could find anything but that Wal-Mart has met its burden of proving the *Faragher/Ellerth* defense.

The *Faragher/Ellerth* defense protects employers who show "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually [racially] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries v. Ellerth*, 524 U.S. 742, 765 (1998).

The first element has two sub-parts; prevention and correction. Wal-Mart has clearly met its obligation to prevent

10

harassing behavior by promulgating and distributing to its employees an adequate racial harassment policy. When Hill complained to Abbot, Abbot immediately called a meeting, told Marshall that his behavior was unacceptable, and even had Marshall apologize to Hill. This was what was called for. Marshall agreed that there would be no future harassment. After Abbot's attempt at correction, Marshall allegedly again harassed Hill by lamenting the rarity of black men who were willing to work. Abbot's initial meeting therefore did not solve the problem. If perfection were required of Wal-Mart, ineffectiveness would defeat its claim to the *Faragher/Ellerth* affirmative defense. But, because Abbot's actions, in light of what Wal-Mart knew, even when viewing the disputed evidence in a light most favorable to Hill, were objectively reasonable, Wal-Mart has satisfied the first criterion of the affirmative defense.

Abbot told Hill that if there were any further incidents of harassment, Hill was to report them to Abbot. Abbot's instruction to Hill was more than enough to qualify as "a preventive or corrective opportunit[y] provided by the employer." *See Id*. Currier, though, went even further by explicitly asking Hill if Marshall had harassed him since the meeting. Hill denied being harassed, even though he was asked after the "black-men-work-infrequently" comment, whether the comment was made before or after March 5, 2000. Without resorting to absurd hypotheticals, this

11

court cannot conceive of what more Abbot, or Currier, could have done to ferret out or to react appropriately to, the incident that was subsequent to the meeting between Hill, Marshall, Abbot and Currier. Abbot never knew about it until after Hill's deposition. Hill clearly failed to take advantage of the corrective opportunity offered him. When an employer specifically asks an employee if he has been harassed, and the employee falsely answers that he has not been harassed, the employee has, as a matter of law, "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer." *Id*. Because there is no dispute of the fact that Hill failed to tell Currier, upon being asked, of this additional incident of alleged harassment, Wal-Mart has met its burden under *Faragher/Burlington*. As a matter of law, Wal-Mart cannot be liable for Marshall's alleged harassing behavior of Hill. Therefore, Wal-Mart is entitled to summary judgment, and by separate order, this court will grant it's motion for summary judgment.

DONE this 21st day of June, 2002.

/s/ William M. Acker
WILLIAM M. ACKER, Jr.
UNITED STATES DISTRICT COURT JUDGE